1
PACIFIC TRIAL ATTORNEYS
A Professional Corporation
2
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
3
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
5
Tel: (949) 706-6464
Fax: (949) 706-6469
6

7
Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/06/2025 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

8
## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9
## COUNTY OF LOS ANGELES

10

11
ANNETTE CODY,

Case No.  25STCV29071

12
          Plaintiff,

**COMPLAINT**

13
          v.

14
MARS, INCORPORATED, a Delaware
corporation, d/b/a SKITTLES,

15

16
          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Defendant sells candy ("the Product"). To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are mostly buying air.  In short, Defendant dupes consumers into paying extra for empty space.

2.      Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, - F. Supp. 3d -, 2024 WL 1748629 (C.D. Cal. Apr. 8, 2024) (Vera, J.); *Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-08100 (C.D. Cal. July 26, 2021); and *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020).

3.      The below picture illustrates the deceptive nature of the packaging and the substantial non-functional slack fill inside the package.  In summary, actual product occupies only a fraction of the exterior space represented by the package:



**PARTIES**

4.    Plaintiff is a resident of California.  Within the statute of limitations period, Plaintiff purchased the Product for personal use.  In making the purchase, Plaintiff relied upon the opaque packaging, including the size of the package and product label, and that was designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had Plaintiff known that the size of the package and product label were false and misleading.  Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's representations about the Product.

5.    Defendant markets the product directly via its website as well as through its agents to consumers nationwide, including in California.  Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California.

**JURISDICTION AND VENUE**

6.    As a court of general jurisdiction, this Court has jurisdiction over all claims presented to it.

7.    Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of revenues from its website based upon interactions with Californians (including instances in which the website operates as a "gateway" to sales), such that the website "is the equivalent of a physical store in California."  Since this case partly involves illegal representations and sales from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

8.      Venue is proper in this County because Defendant is not a citizen or resident of California, meaning that venue is proper in any County that plaintiff selects.

**FACTUAL BACKGROUND**

9.      While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they have been misled by food packaging and labeling.[1]  The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

10.     Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

11.     Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

12.     Defendant falsely represents the quantity of product in each of the Product's opaque package. The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

13.     Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity product

---

[1]  https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited October 2025).
[2]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited October 2025).
[3] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

meaningfully different from the size of the package.  Low income consumers, like Plaintiff, are most likely to be misled by slack fill misrepresentations.[4]

14.     Prior to the point of sale, the Product's packaging does not allow for confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

15.     The other information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

16.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Products' packages that would be different from their expectation that the quantity of product is commensurate with the size of the package.

17.     Plaintiff had dual motivations for purchasing the product.  First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law.  Second, Plaintiff was genuinely interested in consuming and enjoying the product, and did so – with disappointment that the package was mostly empty.

18.     Plaintiff's status as a dual motivation tester is both necessary and appropriate.  First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes.  *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023).  Second,

---

[4]    https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last accessed October 2025).

nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at \*3 (C.D. Cal. 2018).

19.     To be clear, Plaintiff would not have purchased the Product had Plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to Plaintiff's expectations.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

20.     Under applicable state law, any opaque food package is considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

21.     The slack-fill in the Product's packages does not protect the contents of the packages. In fact, empty space does not protect the Product.

22.     The machines used to package the Products would not be affected if there was more product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

23.     Because the packages are filled to little less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

24.     The slack-fill present in the Product's packages is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

25.     The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

26.    The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the product. The packages are intended to be discarded immediately after the product is used.

27.    The slack-fill present in the packages does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

28.    Defendant can easily increase the quantity of product in each package (or, alternatively, decrease the size of the packages) significantly.

29.    Because none of the safe harbor provisions apply to the Product's packaging, the packages contain nonfunctional slack-fill and are, therefore, misleading as a matter of law.

30.    Defendant's false, deceptive, and misleading label statements are unlawful under state consumer protection and packaging laws.

31.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

32.    **Plaintiff brings this lawsuit as an individual action with the hope that Defendant will accept responsibility for its actions and take all appropriate remedial measures.    If Defendant refuses, Plaintiff will amend this Complaint to assert claims on behalf of a class.**

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## COMMON LAW FRAUD

33.    The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

34.    Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

      a.    **Who**: The false representations were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

b. **What**: The false representation was the representation that the package was full of product, and the specific concealment was that the package was half empty.

c. **When**: The misrepresentation has been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the product in the six months prior to filing this Complaint.

d. **Where**: The misrepresentation was made on Defendant's website, marketing materials, and the packaging of the product.

e. **Why**: Defendant made the misrepresentation to induce consumers to purchase the product, to cause them to pay more for the product, and to take market share and profits from its competitors.

35.    **Knowledge**: Defendant knows that the packaging is half empty, knows that consumers will purchase the product based upon the belief that it is full, and knows that it is deceiving consumers.

36.    **Intent to defraud**: Defendant intends for consumers to purchase the product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

37.    **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

38.    **Resulting damage**: Plaintiff was damaged by paying more for a product than Plaintiff would have paid and receiving less product than Plaintiff expected to receive.  To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

## <u>SECOND CAUSE OF ACTION</u>

## **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

## **CALIFORNIA CIVIL CODE § 1750, *et seq*.**

39.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

40.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming

public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with 21 C.F.R § 100.100 and the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of product contained within each package, when it has not.

41.    Defendant deceived Plaintiff by representing that the Product's packaging, which includes significant nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. § 100.100.

42.    Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.

43.    Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

44.    Defendant knew that the Product's packaging was misleading and deceptive.

45.    Defendant's packaging of the Product was a material factor in Plaintiff's decisions to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received. Had Plaintiff known the truth of the matter, Plaintiff would have not have purchased the Product.

46.    Plaintiff has suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for product never received.

47.    More than 30 days prior to filing this Complaint, Plaintiff notified Defendant of the particular alleged violations of Section 1770 and demanded that Defendant correct, repair, replace, or otherwise rectify the violation.  Defendant has not fully complied with Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief on all causes of action as follows:

A.  An order requiring Defendant to add a conspicuous "fill line" to the front of the Product's packaging sold in California;

B.  Actual, statutory, and punitive damages;

C.  Attorneys' fees and costs; and

D.  All other relief at law or in equity that may be just and proper.

Dated:  October 5, 2025                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott J. Ferrell
Attorneys for Plaintiff